

# LAW OFFICES OF
# WILLIAM CAFARO

**William Cafaro, Esq.**
ADMITTED IN NY, CA, MD & TX
Email: bcafaro@cafaroesq.com

**Amit Kumar, Esq.**
*Managing Attorney*
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: lleon@cafaroesq.com

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

November 26, 2018

**_Via ECF_**
Judge Laura Taylor Swain, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street,
New York, New York 10007

Re:     *Riveras v. Bilboa Rest. Corp. et al.*
        Case No.: 17-cv-04430 (LTS)(BCM)

Your Honor:

We represent the two (2) named Plaintiffs Oscar Riveras and Benjamin Dominguez and the fifteen (15) opt-in Plaintiffs. Unfortunately, due to certain disagreements with defense counsel, we are unable to present this application as a joint letter and must do so unilaterally. Plaintiffs initially proposed submitting detailed damage calculations and the methodology of the apportionment between the several plaintiffs. Defendants balked and demanded that we limit the information furnished to the Court to i) the percentage the gross settlement bears to the total of plaintiffs' aggregate claims and ii) the amount each plaintiff was to receive. They opposed the inclusion of any of the assumptions used to calculate each of plaintiff's individual claims. They demanded that the e-mail exchange between us be submitted with our letter, Ex. "1". Although Defendants claim that they had consented to the inclusion of calculations, this is contradicted by their 11/21/18 markup of our original submission which deleted all of that information. In that markup, *defense counsel added the following footnote*: "Defendants take no position with respect to the amount or reasonableness of the fees claimed by Plaintiffs' counsel, or any of the facts supporting their fee application." However, at the point where we were unable to agree on a joint submission, the defense decided for the first time that the requested attorneys' fee was "completely divorced from reality." Although no allocation of any portion of the settlement toward attorneys' fees was ever discussed until this disagreement arose, we now expect the contingency fee to be disputed.

This letter is accordingly submitted  pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the Parties' settlement agreement, a copy of which is attached hereto as Exhibit "2"**,** and "So Order" the stipulation of dismissal with prejudice pursuant to Federal Rule of Civil Procedure Rule

41(1)(a)(ii), annexed to the Settlement Agreement. As explained further below, Plaintiffs respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable, however, this application is submitted to the Court pursuant to FRE 408 and/or CPLR § 4547, with the understanding that no portion of this letter or the exhibits may be used for any purpose if this settlement is not consummated and the action has to go forward.

.

## I.       Preliminary Statement

On June 13, 2017, the named Plaintiffs filed their complaint on behalf of themselves and all similarly situated current and former restaurant employees seeking, *inter alia*, damages for unpaid minimum wages under the FLSA and NYLL.[1]  Plaintiffs were employed by Defendants – a restaurant and it's owners/managers - as servers, servers' assistants, back waiters, bussers, runners, bartenders, bar backs and other tipped employees.

Plaintiffs allege that Defendants made unlawful deductions for meal breaks, which Plaintiffs did not take; failed to notify Plaintiffs in writing of the tip credit provisions of the NYLL and/or FLSA, or of their intent to apply a tip credit to wages; allowed managerial employees, including Alberto Perez and others, to unlawfully retain a portion of Plaintiffs' tip pool; and retained an additional 4.5% of Plaintiffs' credit card tips. Plaintiffs further allege that despite these violations of the law, Defendants took tip credit allowances paying Plaintiffs well below the minimum wage for non-tipped employees.  Finally, Plaintiffs allege that Defendants failed to provide them with accurate wage statements and wage notification, if any at all, as required under the NYLL.  Attached as Exhibit "3" is a thorough damage calculation as to each of Plaintiffs' claims, showing the time periods for which each one seeks relief and how much we contend each is owed.

Plaintiffs alleged that Defendants are liable in the following ways.  First, their failure to properly notify Plaintiffs of the tip credit provisions and their unlawful retention of tips and wages invalidate all tip credit allowances that they would have otherwise enjoyed.  Thus, we alleged that Defendants are liable for the differential between the tip credit hourly rate each plaintiff was paid and the minimum wage for non-tipped employees during the relevant time period.  Second, we alleged that Defendants are liable for the tips and wages that they illegally retained from each plaintiff.  Because it was virtually impossible to quantify the precise amount that was withheld from each plaintiff per week, we calculated damages by assuming that an average of $60.00 was retained from each plaintiff per week of their employment during the relevant time periods.

## II.      The Settlement Reached Between the Parties

After months of litigation, including circulation of FLSA notices to the putative collective members, exchanging over two thousand pages of records regarding the 17 Plaintiffs, preparing for a settlement conference before Judge Barbara Moses, and engaging in good faith settlement negotiations, the parties were able to arrive at a non-class wide settlement of $700,000.00.  Indeed,

---

[1] Although the complaint alleges overtime and spread of hours violations, after careful discussions with all Plaintiffs, it was determined that no such violations existed.

the negotiated recovery represents over 84%[2] of the Plaintiffs' total joint claims under both the FLSA and the NYLL inclusive of actual and liquidated damages *See* Exhibit "3".

Although the proposed settlement agreement does not indicate how much each of the Plaintiffs will receive or how much Plaintiffs' counsel requests in fees, the allocation page attached as Exhibit "4" does exactly that. We used the following methodology to compute the allocation vis á vis each individual Plaintiff. First, we added all of Plaintiffs' claims. Then we calculated the percentage of each Plaintiff's claim by dividing the total amount of all claims by each individual Plaintiff's claim. We then subtracted our requested attorneys' fees from the gross settlement amount. Finally, we multiplied the remaining proceeds by each Plaintiffs' percentage of the total claims. Subject to Court approval of these amounts and the requested attorneys' fees, each Plaintiff will receive the corresponding amount indicated in Exhibit "4".

With respect to the release language in the Agreement, it is limited solely to wage and hour and related claims; it contains no confidentiality or non-disparagement provisions. *See, Barbecho v. M.A. Angeliades, Inc.*, 2017 U.S. Dist. LEXIS 48595, at *6 (S.D.N.Y. Mar. 30, 2017) (rejecting FLSA settlement containing a "general release that r[an] only in favor of defendants"); *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15cv1321, 2015 U.S. Dist. LEXIS 117179, at *2-3 (S.D.N.Y. Aug. 17, 2015) ("[T]he overwhelming majority of courts reject the proposition that FLSA settlements can be confidential."); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2015 U.S. Dist. LEXIS 162243, at *8-9 (S.D.N.Y. Dec. 3, 2015) (rejecting a provision prohibiting plaintiffs from "mak[ing] disparaging or detrimental comments, statements or the like about Defendants").

The undersigned believes that the $700,000.00 settlement is an optimal result, especially since the case is being settled on a collective basis only, and no one is relinquishing any rights without their express written consent. While we were confident that we would have been able to prevail at a higher figure after running up a higher lodestar amount, this would have entailed significant risk and would have been irresponsible. After all, this is our clients' case, and their preference of acceptance or rejection of any offer of settlement should certainly govern. Furthermore, each party is represented by experienced counsel. Our practice focuses on employment law and we handle a very significant volume of FLSA cases.

## III.     The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent

---

2 This percentage is derived from our calculations in Exhibit "3", using assumptions that could reasonably be expected to emerge from contested litigation. The original calculations submitted to the defense at the outset of negotiations were somewhat higher. The gross settlement represents approximately 66% of the calculations we initially submitted to Defendants, which included prejudgment interest and a higher assumption of the weekly tip misappropriations.

adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).  In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.  *Wolinsky*, *supra* at 335.

*Plaintiff's Range of Possible Recovery*

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome.  *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012).  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).  Here, while Plaintiffs allege entitlement to damages, Defendants aver that they were properly paid at all times and therefore not entitled to any damages.

In light of the totality of the circumstances, the settlement represents a reasonable compromise of the *bona fide* dispute in this matter.  The settlement eliminates risks and ensures that the Plaintiffs will receive a meaningful amount of wages and liquidated damages even after the requested legal fee.

*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).  The Parties engaged in discovery and participated in protracted arm's length settlement discussions over an extended period in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

*Possibility of Fraud or Collusion*

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer.  To the contrary, the settlement was the result of vigorous arm's-length negotiations. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation.  Moreover, because the business

closed, all Plaintiffs had left the Defendants' employ prior to the settlement. Therefore, there has not been, nor could there have been, any undue influence exercised upon Plaintiffs in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007).  Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case.  At all times, negotiations took place between experienced counsel and were at arm's-length.  Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

### IV.    Although the Retainer Agreement Provides for an Attorneys' Fee of One-Third of the Settlement Amount, Our Fee Request is Much More Modest

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering unpaid minimum wages, retained tips, and money due for wage statements and wage notice violations.  Under the retainer agreement, Plaintiffs' counsel would be entitled to a one third fee on the gross recovery of Seven Hundred Thousand and 00/100 ($700,000.00) Dollars which equates to $233,333.33, plus the out of pocket costs and disbursements, which are $1,054.64, consisting of the filing fee, process service costs, and costs for circulating FLSA notices to the putative collective members. However, the undersigned is only requesting 27.5%, or $192,500 of the gross settlement, which is inclusive of the out of pocket costs.

Despite our sincere belief that our diligent work, legal strategy and negotiating skill helped obtain this great result, we recognize that the lodestar is considerably less than the contracted one third fee.  As such, we are only requesting 27.5% fee on the gross amount and we will absorb the out of pocket costs. As shown in Exhibits "3" and "4", under the proposed distribution, the Plaintiffs are receiving the vast majority of their damages, inclusive of actual and liquidated damages, even after the requested attorney's fee is subtracted.

The undersigned recognizes that the case was settled before depositions and no settlement conference was actually held. Attorney time has also been expended on disputes arising out of the fee application, but this was regrettably necessary in order to submit enough information for the Court to assess the fairness of the settlement, *see, Wolinsky, supra* at 335.

In *Martinez v. SJG Foods LLC*, 2017 U.S. Dist. LEXIS 171028, *4-5, 2017 WL 4676828, Judge Ronnie Abrams approved a one third fee on a $200,000 settlement with a lodestar of only $8,130.00[3] and disbursements of $925. This was effectively a multiplier of 8.2 or 7.3, depending on whether disbursements are taken into account in the computation. Here, adding the disbursements being absorbed together with the lodestar, we are requesting a multiplier of 6.7. As set forth in *Martinez, supra*:

---

3 The lodestar submission in support of the fairness application in that case, SDNY No. 16-CV-7890 (RA), is appended as Ex. "6"

   Applying the "percentage of the fund" approach in this case, and considering all
the "traditional criteria," the Court concludes that the attorneys' fees sought in the
Agreement are reasonable. Plaintiffs' counsel seek one-third of the [*5] total award
of $200,000. When using a "percentage of the fund" approach, "courts regularly
approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza
v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 U.S. Dist. LEXIS 166890,
2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015). Even one-third awards,
however, can be "simply too great" in relation to the work performed. *Larrea v.
FPC Coffees Realty Co., Inc.*, No. 15-CV-1515 (RA), 2017 U.S. Dist. LEXIS
69166, 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017) (declining to approve an
11.4 multiplier of the lodestar). But given the swift resolution of this case and the
Court's desire to avoid "creat[ing] a disincentive to early settlement," *Hyun v.
Ippudo USA Holdings et al.*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS
39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting *McDaniel v.
Cty. Of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010), the requested fees are
reasonable.


   Courts also consider the size of the settlement to ensure that the percentage award does not
constitute a 'windfall.'" *Asare v. Change Group N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, 2013
WL 6144764 at *21. There is no real consensus in our circuit as to what an appropriate multiplier
is. One court commented that multipliers of between 3 and 4.5 had become common and described
2.09 as "at the lower end of the range of multipliers awarded by courts within the Second
Circuit." *In re Lloyd's American Trust Fund Litigation*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS
22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); see also *Maley v. Del Global
Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well
within the range awarded by courts in this Circuit and courts throughout the country").
See also *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 at 473 (S.D.N.Y.
1998) (awarding multiplier of 3.97 times lodestar); *Rabin v. Concord Assets Group, Inc.*, No. 89
Civ. 6130 (LBS), 1991 U.S. Dist. LEXIS 18273, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19,
1991) (awarding multiplier of 4.4); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905 (MBM),
1992 U.S. Dist. LEXIS 12702, 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24,
1992) (awarding multiplier of 6). While there is also authority suggesting multipliers of 2 or less,
this is all obviously within the sound discretion of the reviewing court. If Your Honor decides to
reduce the requested fee, it is requested that any such reduction be distributed to the Plaintiffs
proportionately.


   As the Court will see, the undersigned expended 18 hours, Attorney Kumar expended 6.6
hours, and Attorney Leon expended 69.2 hours. *See,* billing records collectively appended as
Exhibit "5". We are requesting a billing rate of $400.00 for myself and $250.00 per hour for Mr.
Kumar. *See Cajamarca v. Yerina Rest. Corp.*, 2016 U.S. Dist. LEXIS 102686 * (S.D.N.Y. Aug.
4, 2016). We are requesting a billing rate of $225.00 for Mr. Leon. *See Peralta v. Regent Catering,
Inc.*, No. 11-cv-06993 (DLI) (JO), Text-Only Order (E.D.N.Y. June 5, 2018) (awarding an hourly
rate of $225.00*); Colon v.45-53 West 110 Street Housing Development Fund Corporation*, No 15-
cv-03382 (AJP) (S.D.N.Y. November 2, 2016).  "To determine the quality of representation, courts
review, among other things, the recovery obtained, and the backgrounds of the lawyers involved

in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I graduated *summa cum laude* from Fordham University with a B.S. in Accounting in 1976. I attended law school at the University of San Diego School of Law and graduated in 1979.  In 1979, I was admitted into the California State bar, where I tried criminal cases, and in 1981, I was admitted to the New York State bar.  Since then I have also been admitted into the bars of both Texas and Maryland, and I have appeared in courts of each of those states. Beginning in 1981, I served as an Assistant District Attorney in Bronx County, trying numerous felony cases to verdict. In 1986, I established a private practice, focusing on personal injury and medical malpractice work over most of my career.  I am a successful trial attorney, having taken two jury verdicts in eight figures, and many verdicts and settlements in seven, one in the Eastern District and one in the Southern District.  In 2009, I began development of the wage and hour practice of the firm.  Since then, my office has filed over 450 individual, collective, and class actions under the Fair Labor Standards Act and New York Labor Law.  The firm has also started a vibrant plaintiff's side employment discrimination practice.  I am an active member of the New York chapter of the National Employment Lawyers Association, and I have actively engaged in lobbying at the federal level on the issue of forced arbitration. I am also fluent in Spanish, which facilitates communication with my clients, which was helpful here as well.  I have also been certified as class counsel, *see, Andrew v. Lakhi General Contractor Inc., et al.,* No. 16-cv-2216(RJD)(JO), Doc. 174, (E.D.N.Y. 2018); *Chavarria v. Airport Serv., LLC*, 875 F. Supp. 2d 164, (E.D.N.Y. 2012). My normal hourly rate is $400, which has been repeatedly approved by the federal judiciary.  See *Cajamarca v. Yerina Rest. Corp.*, 2016 U.S. Dist. LEXIS 102686, *4-5 (S.D.N.Y. Aug. 4, 2016); *Flores v. Food Exrpess Rego Park, Inc.*, 2016 U.S. Dist. LEXIS 11351, 2016 WL 386042 (E.D.N.Y. Feb. 1, 2016); *Mendes-Garcia v. 77 Deerhurst Corp. et al.*, No. 11-cv-02797 (PGG) (MHD), D.E. 226 (S.D.N.Y. Aug. 19, 2014) (awarding William Cafaro, Esq. a reasonable rate of $400 per hour in a FLSA collective matter with approximately 175 opt-ins).  I was recently commended by a magistrate judge for rendering "exemplary service" to my client in a FLSA case see, *Martinez v. Bella Bianchi's Ltd., et al*, EDNY 16-cv-6800, Doc. 22, p. 2 of 2, fn 2. Judge Sullivan commented at a FLSA fairness hearing that "Mr. Cafaro does these cases, knows what he's doing, and has carved out some expertise in the field", *Ramos v. Rector Street Food Enterprises Ltd*, SDNY 17-cv-3329, Hrg. Transcript 12/1/17 p. 12, LL 7-9. I am requesting $400 per hour for my work on this case. *See, also, Clark v. Ecolab, Inc.*, 07 Civ. 08623 (PAC), DE 101, (S.D.N.Y. Apr 27, 2010) (In 2010 awarding rates for partners between $475 to $900 per hour); *Guallpa v. N.Y. Pro Signs Inc.*, No. 11cv3133 (LGS) (FM), 2014 U.S. Dist. LEXIS 77033 (S.D.N.Y. May 27, 2014) (Approving rate of $600 per hour for a partner in a wage and hour action).

As for Amit Kumar, he has been an associate with my office since 2013.  He earned his B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and his J.D from Hofstra University School of Law in 2012.  While in law school, he worked as a law clerk for several employment law firms of note, including Schwartz & Perry, LLP and Outten & Golden LLP.  Also, while in law school, he was a judicial intern for United States Magistrate Judge Ronald L. Ellis of the Southern District of New York.  He was admitted to practice in the State Courts of New York and New Jersey in 2013 and later that same year was admitted to practice before the Southern and Eastern Districts of New

York.  Since being admitted in 2013, he has focused primarily on plaintiffs' employment matters in both wage and hour as well as discrimination matters. Further, while working at the Law Offices of William Cafaro, he has had the opportunity to second chair several successful wage and hour actions through trial and was sole trial counsel on a wage and hour action in the Southern District of New York, *Cajamarca v. Yerina Restaurant Corp., et al.*, No. 15-cv-08244 (GHW).  He is also a member of the South Asian Bar Association of New York, where he sits on the Public Interest Committee.  His normal hourly rate of $250.00 and Plaintiff is requesting this rate for my work on this action.  *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Amit Kumar his normal hourly rate of $250 per hour); *Mendes-Garcia v. 77 Deerhurst Corp. et al.*, No. 11-cv-02797 (PGG) (MHD), D.E. 226 (S.D.N.Y. Aug. 19, 2014) (awarding Amit Kumar, Esq. a reasonable rate of $250 per hour in a FLSA matter)

Louis M. Leon has been employed as an associate with The Law Offices of William Cafaro since July 2017.  He received the degree of Juris Doctor from Maurice A. Deane School of Law at Hofstra University in 2014 and is admitted to practice in the state courts of New York as well as the Southern and Eastern Districts of New York.  He is fluent in both English and Spanish.  Prior to working at the Law Offices of William Cafaro, he was an associate at Frank & Associates, P.C. and later at Borrelli & Associates, P.L.L.C. where he worked almost exclusively on collective and class action wage and hour litigation. He has also tried 2 wage and hour actions.

Nicholas Duran is a paralegal with the Law Offices of William Cafaro, who expended 32.7 hours. He graduated from John Jay College of Criminal Justice, where he received a B.S. in Criminal Justice with a minor in Law in 2009.  He also graduated from LaGuardia Community College in 2007, where he received an A.A.S degree in paralegal studies.  Mr. Duran began working for the Law Offices of William Cafaro in 2007 and is fluent in both English and Spanish.  Mr. Duran provided paralegal and translation services throughout the duration of the litigation. Mr. Duran's normal hourly rate is $125.00 but Plaintiff is requesting $100.00 for his work on this action.  *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Mr. Duran his normal hourly rate of $125 per hour).

The combined lodestar between counsel and Mr. Duran as a paralegal is $27,690.00, which, together with the disbursements, comes to a total of $28,744.64.  Although the lodestar is well below the 1/3 contingency, we have adjusted our fee request, and counsels' diligent and consistent efforts to resolve this case justify the requested fee.

The out of pocket expenses incurred were as follows: $400.00 for the filing fee, $270.00 to Gotham, our process server, $64.32 in postage costs for the FLSA Notices and $320.32 for the application utilized to circulate text messages to the members of the collective. The expenses totaled $1,054.64.

## V.    Conclusion

For the reasons set forth above the Plaintiff requests that the Court approve the settlement as reflected in the Agreement, and that the Court "So Order" the Dismissal with Prejudice appended to the executed settlement agreement, Exhibit "2".  Plaintiffs' counsel further requests that the Court approve the attorney's fee award requested as fair and reasonable.

Respectfully submitted,

___/s/ William Cafaro_____
By William Cafaro (WC 2730)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
Bacafaro@CafaroEsq.com

To:     All Counsel *via* ECF